IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KEYNETICS SHAREHOLDER TRUST, a Delaware statutory and voting trust, | § § § § | No. 118, 2025 |
| Defendant and Counterclaim Plaintiff Below, Appellant, | § § § § | Court Below: Court of Chancery of the State of Delaware |
| and | § § | C.A. No. 2022-0006 |
| GARY LUTIN, a New York resident, | § § § | |
| Non-Party Below, Appellant, | § § | |
| v. | § § § | |
| KEYNETICS INC., a Delaware corporation, | § § § § | |
| Plaintiff and Counterclaim Defendant Below, Appellee. | § § § § | |

Submitted:  October 15, 2025
Decided:  October 20, 2025

Before **SEITZ**, Chief Justice; **LEGROW** and **GRIFFITHS**, Justices.

## **ORDER**

The Court, having considered the briefs and the record below, rules as follows:

(1)  This is an appeal from a Court of Chancery decision holding Keynetics Shareholder Trust and its corporate trustee in contempt and imposing sanctions. The court found that the Trust and its trustee repeatedly violated the court's orders to stop facilitating transfers of interests in Keynetics Inc. stock and the Trust that would

have jeopardized Keynetics' S-corporation status. When lesser sanctions did not compel compliance, the court ordered the Trust dissolved and imposed joint-and-several liability for Keynetics' fees and expenses among the Trust, its corporate trustee, and the trustee's controller.

(2) On appeal, the Trust and its corporate trustee's chairman argue that the court exceeded its discretion and made legal errors by imposing contempt sanctions and ordering the Trust dissolved. The issues leading to the contempt finding were, however, decided by the court's un-appealed prior final orders and cannot be revisited in this appeal. The sanctions were also well within the court's discretion. Accordingly, we will affirm the court's judgment.

*Facts*

(3) Keynetics is a Delaware S-corporation.[1] S-corporations do not pay taxes. Instead, they pass income and losses through to stockholders, who recognize the income and losses *pro rata*.[2] An S-corporation's stock may only be held by "permissible" stockholders like individuals. Otherwise, it risks losing its pass-

---

[1] App. to Opening Br. at A0591 [hereinafter A_] (Answer to Verified Complaint & Verified Counterclaim at 42) [hereinafter Answer].

[2] *Keynetics, Inc. v. Keynetics S'holder Tr.*, 331 A.3d 202, 207 (Del. Ch. 2025)) [hereinafter Op. at _].

through tax benefits.[3] A corporation is not a permissible S-corporation stockholder.[4] To protect its S-corporation status, Article 4.3 of Keynetics' Certificate of Incorporation – the "Charter Restriction" – allows it to issue Stop Transfer Notices that prohibit transfers of its stock "reasonably likely" to affect its tax status.[5]

(4)    The Trust is a Delaware voting trust which holds record title to Keynetics stock.[6] Voting trusts are only permissible S-corporation stockholders if all beneficiaries are also permissible stockholders.[7] Gary Lutin is the chairman of the trustee corporation, Fair Value Investment, Inc.[8] Lutin has communicated many times with Keynetics' representatives on behalf of the Trust and Trustee.[9] The court found that Lutin personally controls the Trust and the Trustee.[10]

---

[3] 26 U.S.C. §§ 1361(b)(1)(B), 1362(d)(4).

[4] 26 U.S.C. § 1361(b)(1).

[5] A0077 (Amend. to Certificate of Incorporation of Keynetics Inc. at 3).

[6] A0591 (Answer at 42).

[7] 26 U.S.C. § 1361(c)(2)(B)(iv).

[8] A0605 (Jan. 19, 2019 Letter from Trust to Keynetics at 2) (Lutin identifying himself as Chairman of the Trustee).  Lutin joins this appeal because the court sanctioned him.  Although the court also sanctioned the Trustee, it did not appeal.

[9] *E.g.*, *id.* (letter from Trust to Keynetics, signed by Lutin).

[10] Op. at 219 ("Lutin bears sole responsibility for the [Trust's] actions. He is the sole decision-maker for the Trustee and the [Trust].").

3

(5)    In 2017, the Trust acquired record title to its Keynetics stock when three individuals – the Trust "Participants" – deposited their shares with the Trust.[11] Later, the Trust became bound by Keynetics' Charter Restriction.[12] In return for their deposits, the Participants received beneficial ownership interests in the Trust through instruments called Trust Certificates.[13] The Trust Certificates correlate with the number of Keynetics shares owned by the individuals.

(6)    Five times in 2021, the Trustee notified Keynetics of agreements to transfer beneficial interests in the Trust from the Participants to a buyer named John Tully.[14] Tully, however, refused to agree to the Charter Restriction.[15] The Trust argued that the restriction did not apply to a transfer of beneficial interests in the Trust.[16] Keynetics disagreed. It first issued Stop Transfer Notices and then filed a Motion to Enforce the Charter Restriction, to prevent the transfer to Tully.[17]

(7)    After a January 2023 hearing on the Motion, Tully agreed to the Charter Restriction and obtained Trust Certificates. Keynetics and the Trust entered a

---

[11] A0591 (Answer at 42).

[12] A0593–94 (Answer at 44–45).

[13] A0591 (Answer at 42).

[14] A0594–99 (Answer at 45–50).

[15] Op. at 208–09.

[16] *Id.* at 209.

[17] *Id.*

stipulated order and final judgment ("Final Judgment"). The Final Judgment stated that "Trust Certificates, *including the corresponding beneficial ownership interest in Keynetics' common stock* held in record name by the Trust," were bound by the Charter Restriction.[18] The judgment was not appealed.

(8)   More transfer attempts followed. The Trustee notified Keynetics of an October 2023 agreement for Tully to transfer his beneficial interest in the Trust to an impermissible stockholder – the corporation Keynetics-Clickbank Investments, Inc. ("Clickbank").[19] Lutin was Clickbank's President.[20] The Trustee offered Keynetics an alternative to this transfer: Keynetics could buy the shares instead.[21]

(9)   Keynetics refused to buy the stock and instead issued a Stop Transfer Notice for the transfer agreement.[22] The Trustee rejected the notice and claimed the Charter Restriction and Final Judgment (together, "Transfer Restrictions") did not bar the transfer.[23] That November, Keynetics filed a motion to enforce the Final

---

[18] App. to Answering Br. at B002 [hereinafter B_] (Stipulated & Proposed Final Judgment at 2) (emphasis added).

[19] A0724–25 (Agreement for Assignment of Beneficial Ownership Interests).

[20] A1040 (July 31, 2024 Letter from Fenwick to Lutin and Tully at 3) ("Mr. Lutin is both the Chairman of the [Trustee] and the President of Keynetics-Clickbank Investments, Inc.").

[21] A0723 (Oct. 19, 2023 Notice of Offered Right of First Refusal).

[22] A0734–36 (Oct. 30, 2023 Letter from Fenwick to Lutin).

[23] A0738–40 (Email Exchange).

Judgment. Two weeks later, the court issued an Order to Show Cause to the Trust.[24] The Trust never responded.[25]

(10)  On January 5, 2024, the court entered a Supplemental Order and Final Judgment ("Supplemental Judgment") "clarifying" that the earlier stipulated Final Judgment prohibited the transfer "of any interest in (i) the Trust, (ii) the Trust Certificates, or (iii) the shares of Keynetics common stock held in record name by the Trust" – unless permitted by the Transfer Restrictions.[26]  The Court also ordered the Trust to pay all Keynetics' legal fees and costs, totaling $117,450 ("First Fee Award").[27]  The Trust did not appeal the Supplemental Judgment.

(11)  Undeterred, the Trust tried twice to transfer beneficial interests in the Trust – these times, from a Participant to the Trust itself – for the stated purpose of paying the First Fee Award.[28]  Again, Keynetics issued Stop Transfer Notices, and then filed a Motion to Enforce the Final and Supplemental Judgments, as well as for

---

[24] A0694 (Nov. 15, 2023 Mot. to Enforce & Mot. for Contempt at 1).

[25] Op. at 210.

[26] B030 (Supp. Ord. & Final Judgment at 4).

[27] B031 (Supp. Ord. & Final Judgment at 5); B045–47 (Proposed Ord. Awarding Att'ys' Fees; Ord. Awarding Att'ys' Fees).

[28] A0835 (Agreement for Assignment of Beneficial Ownership Interests at 1); A0840 (Email Exchange).

6

contempt.[29] The Trust did not formally respond to a second Order to Show Cause, but Lutin appeared at the hearing on the Motions.[30] Afterwards, the court in the "Second MTE Order":

- [H]eld the [Trust] in contempt of the Final Judgment and First Fee Award;
- imposed [a] *per diem* fine on the [Trust] of $3,000 for each day it remained in contempt;
- declared the transfers void *ab initio*;
- ordered the [Trust] not to proceed with the challenged transfers;
- awarded [Keynetics] its expenses (the "Second Fee Award");
- found Lutin jointly and severally liable with the Trust for the Second Fee Award;
- imposed a *per diem* fine on Lutin of $3,000 for each day the [Trust] is in contempt of the Second Fee Award;
- held the [Trust] will be dissolved if it fails to pay either the First Fee Award or the Second Fee Award within thirty days of the entry of the Second Supplemental Judgment.[31]

The Second MTE Order became final on March 27, 2025 (belatedly, due to a filing error).[32]

(12)    Even this second round of sanctions, however, did not deter the Trust. In July 2024, after the court issued its Second MTE Order, the Trustee sent yet another agreement, this time to transfer beneficial ownership interests in Keynetics

---

[29] A0854 (Email Exchange); B051 (April 29, 2024 Mot. to Enforce & Mot. for Contempt at 1).

[30] B096 (June 26, 2024 Hearing on Mot. to Enforce & Mot. for Contempt at 2:7–9).

[31] Op. at 211–12.

[32] *Id.* at 213 ("Through inadvertent oversight, the court failed to enter an order approving the amount sought.").

stock (as opposed to in the Trust) from Tully to Clickbank.[33]  Shortly thereafter, Keynetics issued another Stop Transfer Notice.  The Trustee responded by claiming the notice was invalid because the Transfer Restrictions did not apply to beneficial interests in the stock.[34]  Keynetics filed a third Motion to Enforce.[35]

(13)  The Trust, finally appearing in court, argued it was impossible to comply with the previous orders to pay fees because it had no assets with which to pay them.[36]  It asserted that, due to its status as a voting trust, it held only non-transferable record title to the stock, and that the transferable beneficial interest was held by the Participants and Tully.  It claimed, therefore, it had no power to sell any of the stock to pay the fees and was immune from any monetary sanction.[37]

(14)  The court was unconvinced.  The Trust's status as a voting trust, it observed, made no difference: "The fact that the [Trust] holds [stock] for the benefit of holders of beneficial interests does not matter, any more than the fact that a corporation owns assets for the ultimate benefit of its stockholders."[38]  What

---

[33] A1016 (Agreement for Assignment of Beneficial Ownership Interests at 1).

[34] A1042–45 (Email Exchange).

[35] A0992 (Aug. 12, 2024 Mot. to Enforce).

[36] A1091 (Nov. 22, 2024 Oral Argument on Mot. to Enforce & Mot. for Contempt at 31:16–22).

[37] *Id.*; A1098 (Nov. 22, 2024 Oral Argument on Mot. to Enforce & Mot. for Contempt at 38:4–6).

[38] Op. at 214.

mattered was that the Trust was a jural entity under Delaware law.[39] And in any event, the court held, the Trust's governing document required the Trustee to pay any contempt sanction.[40] Finally, the court found that the Trust and its Trustee had shown an ability to pay the debts, as they had employed several law firms.[41] The court therefore rejected an impossibility defense for the earlier-imposed sanctions.

(15) The court then issued new sanctions. It held that the most recent transfer attempt, like the previous attempts, violated the Final and Supplemental Judgments.[42] Noting its lesser sanctions had proven ineffective, the court issued a permanent injunction: (a) requiring the Trust to withdraw its consent to the latest transfer agreement and not to recognize any similar assignment;[43] (b) ordering the Trust dissolved;[44] (c) approving $109,793 for the Second Fee Award and awarded Keynetics an undetermined Third Fee Award;[45] (d) holding Lutin and the Trustee

---

[39] Id.

[40] Id. at 214–15.

[41] Id. at 215.

[42] Id.

[43] Id. at 216.

[44] Id. at 217–18.

[45] Id. at 218.

jointly and severally liable with the Trust for the amounts due;[46] and (e) barring each from participating in any entity holding Keynetics stock.[47]

(16) The Trust and Lutin appeal from the court's last order. They argue that (a) all sanctions on the Trust are improper because the court conflated record ownership with beneficial ownership, (b) the court erred as a matter of law and exceeded its discretion by dissolving the Trust, and (c) the court exceeded its discretion by sanctioning Lutin and the Trustee.

*Standard of Review*

(17) "A trial judge has broad discretion to impose sanctions for failure to abide by its orders."[48] Its decision must be "just and reasonable," and there must have been "an element of willingness or conscious disregard" by the sanctioned party.[49] We review contempt sanctions to determine if the trial court exceeded its

---

[46] *Id.* at 218–19.

[47] *Id.*

[48] *Gallagher v. Long*, 940 A.2d 945, 2007 WL 3262150, at *2 (Del. 2007) (TABLE) (affirming Court of Chancery's imposition of contempt sanctions for parties' failure to make celebrity memorabilia available for insurance-related inspection).

[49] *Id.*

discretion, and review claimed errors of law *de novo*.[50] We will uphold a trial court's factual findings unless they are clearly wrong.[51]

*Analysis*

(18)   First, the Trust argues that the Court of Chancery erred by imposing stop-transfer restrictions and sanctions on a legal entity that held only voting rights to Keynetics' stock. According to the Trust, because it controlled only the voting power and not the beneficial interest in Keynetics stock, the Trust could not comply with the court's order to stop transferring beneficial interests in Keynetics' stock.

(19)   In its Final Judgment and Second MTE Order, however, the Court of Chancery necessarily found that the Trust owned or controlled both the record and beneficial ownership of the Keynetics stock held in trust.[52] It prohibited the defendants from causing "any transfer, assignment, or attempted transfer or assignment of *any interest* in (i) the Voting Trust, (ii) the Trust Certificates, or (iii) the shares of Keynetics common stock held in record name by the Voting Trust."[53]

---

[50] *TransPerfect Global, Inc. v. Pincus*, 278 A.3d 630, 645 (Del. 2022) (finding corporation in contempt for filing separate action in Nevada and affirming Court of Chancery's sanction awards).

[51] *In re Hurley*, 257 A.3d 1012, 1017 (Del. 2021) (referring to standard as "clear error" and applying contempt standards to affirm Superior Court's sanctions for gag order violations).

[52] *See, e.g.*, A0756–58, 793 (Hearing on Cross-Mots. for Judgment on the Pleadings at 12:9–14:16, 49:20–22) (observing that the Trust owns Keynetics shares while the Trust Certificate owners hold beneficial interests in the Trust).

[53] B030 (Supp. Ord. & Final Judgment at 4) (emphasis added).

11

If the Trust disagreed with the court's ruling, it could have appealed. Whether correct or not, the court's unappealed orders became final. The Trust is barred from raising new arguments involving the same parties that could have been raised in the earlier proceeding.[54]

(20) The Trust argues next that the court erred as a matter of law and exceeded its discretion by ordering that the Trust be dissolved.[55] Although "a statutory trust shall have perpetual existence, and . . . may not be terminated or revoked by a beneficial owner or other person except in accordance with the terms of its governing instrument,"[56] a court is not included in the list of individuals or entities prohibited from terminating the trust. Thus, there is no statutory bar to equitable dissolution of a statutory trust as a sanction for contempt.

(21) Under Court of Chancery Rule 70(b), the court can hold a party in contempt who "fail[s] to obey a restraining or injunctive order, or to obey or to perform any order." It has broad discretion when choosing a remedy for contempt.[57]

---

[54] *Aveta v. Bengoa*, 986 A.2d 1166, 1185–86 (Del. Ch. 2009) (quoting *Hendry v. Hendry*, 2006 WL 1565254, at *8 (Del. Ch. May 26, 2006) (in a contempt proceeding, *res judicata* applies to "'all claims that were litigated or *which could have been litigated* in the earlier proceeding.'") (emphasis added)).

[55] Opening Br. at 26.

[56] 12 *Del. C.* § 3808(a).

[57] *Jagodzinski v. Silicon Valley Innovation Co., LLC*, 2012 WL 593613, at *2 (Del. Ch. Feb. 14, 2012) ("This Court has broad discretion in formulating a remedy for violations of its orders.") (citing *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.,* 817 A.2d 160, 176 (Del. 2002)).

Even though it must be exercised with great restraint, the court's equitable power to dissolve a trust for contempt, like its power to dissolve a solvent corporation, is justified "upon a showing of gross mismanagement, positive misconduct by the corporate officers, breach of trust, or extreme circumstances showing imminent danger of great loss to the corporation which, otherwise, cannot be prevented."[58]

(22) That showing has been made here. Lutin controlled the Trustee, which controlled the Trust. Lutin controlled Clickbank. Multiple times, the court ordered the Trust not to engage in transfer attempts. The Trust's controller – Lutin, acting for Clickbank – did so anyway, when he sought to have Clickbank – an impermissible entity – take possession of Trust Certificates and Keynetics stock. These attempts persisted even after the court specifically warned Lutin that any further violations would result in the Trust's dissolution.[59] As the Court of Chancery observed, orders "bind[] not only the named parties, but also 'those identified with them in interest, in "privity" with them, represented by them or subject to their control.'"[60] Parties in privity with the Trust – namely, Lutin and Clickbank – defied

---

[58] *Hall v. John S. Isaacs & Sons Farms, Inc.*, 163 A.2d 288, 293 (Del. Ch. 1960).

[59] B096 (June 26, 2024 Hearing on Mot. to Enforce & Mot. for Contempt at 2:7–9).

[60] *Deutsch v. ZST Digital Networks, Inc.*, 2018 WL 3005822, at *10 (Del. Ch. June 14, 2018) (quoting *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945)).

13

the court's orders, even after being warned what consequences would follow. An extreme remedy was warranted under the circumstances.

(23) Finally, the Trust and Lutin argue that the court exceeded its discretion by imposing sanctions on Lutin and the Trustee. Although uncommon, "in appropriate circumstances, an order can be enforced against non-parties."[61] These are appropriate circumstances. Lutin controlled the Trust, the Trustee, and the Clickbank corporation, each of which acted to further violations of court orders which jeopardized Keynetics' S-corporation status and resulted in needless litigation. Imposing sanctions on Lutin and the Trustee was necessary to ensure court orders were no longer defied through the "carrying out [of] prohibited acts through [non-party] aiders and abettors . . . ."[62] The court did not exceed its discretion in sanctioning either Lutin or the Trustee.

(24) The Trust and Lutin concede that non-parties are subject to sanction, but claim they are immune under 11 *Del. C.* § 3803(b). The statute limits personal liability for trustees absent a clear waiver of that limitation in a trust document.[63] Their argument fails, however, because the statute's limitation of liability covers

---

[61] *Id.* at *10 (citing CT. CH. R. 65, 70).

[62] *Id.*

[63] 11 *Del. C.* § 3803(b).

monetary damages to another person, not a judicial order imposing contempt sanctions.[64]

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:


*/s/ Collins J. Seitz, Jr.*
Chief Justice

---

[64] *STMicroelectronics N.V. v. Agere Sys., Inc.*, 2009 WL 1444405, at *3 (Del. Super. May 19, 2009) (remarking in Rule 11 context that "[s]anctions and damages awards are qualitatively different").